19-1165, Uber Technologies v. X One. Obviously a different case than the first. Good morning. Good morning. May I please the Court, Lauren Degnan for Uber Technologies. In this case, the Board did not apply the broadest reasonable interpretation of the application and launch limitations because it grafted on a narrowing limitation during or near the time of launch which caused the claims to exclude the current embodiment and it caused the Board to find that Kunichi lacked these application launch limitations. Let me ask you a housekeeping question. Are independent claims 1, 22, and 28 illustrious? They are. Okay. Thank you. So 1 and 28 have the same language and 22 is a slightly different language but those are the independent claims you focus on. Okay. The challenge I'm having in this case, this is just to help me out here and I'll ask the other side if they have anything to add. I'm trying to figure out what the claim construction was because the Board purports to have accepted the District Court's claim construction, correct? But then there's this whole discussion that the Board has on Appendix 15 really because you're talking, the issue here, the dispute here seems to be about whether responsive and the other claim limitation has a specific temporal limitation. And is this where you're saying the Board grafted on these additional limitations? Because I'm just a little confused about what their actual claim construction was. Yes, Your Honor. And I think you're right to notice this ambiguity. Yes, the Board did two things. First, it purported to adopt the District Court's construction but then it said it clarified it. So were you okay with the District Court's construction? Do you read the District Court as not having imposed a particular temporal limitation? So I would say this, Your Honor. The District Court did impose what it called a temporal limitation but the Board's construction is more narrow because it says that the claimed activities have to be performed right here on Appendix 15 during or near the time of the start of the application whereas the District Court's construction was more broad because while the Court said there was a temporal relationship, it also noted, for example, that an indirect connection could be enough. And it said that these functions could occur after launch and while the application was running. Okay, and the Board just concluded that, it seems, from this paragraph because they were fixated on the word launch. The Board was. And so launch has to mean something and that's why we're imposing this to occur during or near the time of startup of the application. Why is that wrong? So the Board was fixated on the ordinary meaning of launch completely divorced from the specification in the written description because what the 647 patent describes and the only embodiment that's relevant to these claims is there's a buddy watch application that launches and then no map is displayed until a user provides input. In particular, the user has to select the map function and the application, the buddy watch application, can wait an indeterminate amount of time. It can wait indefinitely. And because of this only embodiment in the specification that's relevant to these claims, the Board ignored, it came up with a construction by focusing on launch independent in a vacuum that excludes this embodiment. And so our construction before the Board was in association with the running of the application. That's meant to caption the idea. There's a launch phase and then there's a running phase. And so these recited functions like displaying the map... I guess the Board was looking at the claim language and it says, just to your point, that that can't be right because you're distinguishing between launching and running and the language itself and both of those limitations that are in dispute here talk about responsive to launching and association with an application launched. So do you have an answer to that? I do, Your Honor. And so again, it's not looking at launch in a vacuum. It says in response to application launch. And what in context of both the claim language and in the written description is that this idea that there's a launch phase and then something else happens. And so what happens is these recited activities. And so the Board was led astray by just thinking that launch has to be different than running. And we agree there's a launch phase and then what happens afterwards is running. And what the claim describes and what the specification discloses exclusively is that the display happens during the running phase. And does the specification talk about launching? Not with respect to the BuddyWatch application. If you look at every time it uses the word launch, it's with something totally different called the talk control feature application. And even there, talk control launches and nothing will happen until there's user input of scrolling the menu. And then other functions will occur. Now that application, that embodiment is not related to displaying a map and selecting a service provider as in the BuddyWatch application. And so while we may agree that in a vacuum one might consider launch different than running, the patentee chose language that really does not capture what's in the specification. Abstract. Cell phones and other wireless devices with GPS receivers have loaded therein a BuddyWatch application, a talk control application. I'm reading from pages 13 and 14. Application programs could be loaded and run on the phones themselves. This is the Board in response to the argument that responsive launching would encompass anything that occurred after launch. And that's specifically BuddyWatch application, not just talk control application. Right, that says loaded, Your Honor, not launch. And so to the question is, is the patent specification describing launching of the BuddyWatch application? Does it describe anything that's done, quote, in response to launch of an application? It does not. The patent does not describe any activity using the words in response to launch. And so when we're faced with a patentee who chooses language in the claims that has no hook back into this written description, the claim construction needs to accommodate the preferred embodiments or we know that it's wrong. How do you deal with the analysis on 14? Thus the specification suggests that the patentee distinguished launching from running. The patentee knew how to direct its claim to the running of an application, but instead the patentee chose to direct its claim to launching the application. The patentee could have used the word running and so on. So, Your Honor, the patentee did use the word launch, but we don't do claim construction solely looking at the claim language and nothing else. We have to find a construction that actually captures the preferred embodiments, which is the BuddyWatch application. No, no, no, but what Judge Wallach was reading, that was preceded by a bunch of examples from the specification. The board there wasn't citing the claim language, it was citing the language of the specification. Now, do you look at the top of 14? I've got a few sites to the specification, which is their basis for concluding that these terms meant different things. So maybe you have an answer to those citations. I do. So those citations with respect to talk control, which is not the embodiment that these claims relate to. The claims relate to displaying a map and that is BuddyWatch. So the very top... So one of the things they cite is BuddyWatch applications running on GPS-enabled cell phones. So they did use running in connection with BuddyWatch. They do, but they do not use, and you do not see here anything in the specification where BuddyWatch is launched. They don't use the term launched in connection with BuddyWatch or something that's performed in response to launch in the BuddyWatch application. What we're objecting to is the during or near the time of graft onto the claim has no support whatsoever in the specification and the BuddyWatch application simply will not work because a long period of time can happen before the MAP-IT function is selected and then the map is displayed. So we've got in the preferred embodiment, launch, you gotta wait forever, just someone hits MAP-IT function and then you might display. So there's some confusion in the briefing and in the record perhaps about whether or not MAP-IT was an application too. Is your understanding that that's what the other side relies on? The other side does rely on that, Your Honor, and the record simply does not support it. MAP-IT is a function. And did the board make any... The board did not make findings supported by evidence that MAP-IT is a function. There is a statement in the background section where it calls it an application, but it does not cite the evidence. Well, you say that MAP-IT is a function. No, no, no, you mean MAP-IT is an application. Yes, the board on page 20, appendix 20, in passing mentioned that MAP-IT is an application, but there's no record support for that. The board did not make a finding. It did not articulate reasoning to show that MAP-IT is an application. And when you look into all the citations we have in the brief, MAP-IT is always referred to as a routine or a function. It's not referred to an application. It's a routine within the Buddy Watch application, just like spell check is a function within something like Microsoft Word. And so there's no embodiment that this construction of door nearing the time of reads on. And so we know that's the reason it could be... is wrong. It's not the broadest, reasonable interpretation of the claim to graft on this door near the time of. Can I just ask you hypothetically, you're asking for a reversal here. Is it your view that we wouldn't, even if we agreed with you on claim construction or on the board's claim construction, we wouldn't have to remand it? There were other arguments that were never addressed by the board. That's right, Your Honor. So I think our position on this is it really depends on the claim. So there's a few claims that we've listed in the brief. For example... The dependent claims? Dependent claims for sure need to be remanded. We listed that. Definitely. I think under this course, owing coring construction, nothing... The only thing that was missing for certain claims was these application launch limitations, so those could be reversed. But there's definitely a remand has to happen to deal with the dependent claims. I'm in my rebuttal time. I would like to save it. Thank you, Your Honor. May it please the court. The PTAP's claim construction of the launch elements was correct, should be affirmed. Well, can you... Yes. Tell me what that construction is. Is it correct? Because, you know, they purported to adopt the district court's claim construction, but they did graft upon that. Am I right when you say we should adopt their claim construction? That includes Appendix 15, which is to say the claim functions to occur during and near the time of the startup of the application? So that's the claim construction we're applying here, right? Yes, that's correct. Okay. What is there in the specification to support this temporal requirement of occurring during or near the time of startup of the application? Well, Your Honor, if we look at the specification at column 26... I'm sorry. At column 6, lines 29 to 41, for example... Your Honor, can you give me an appendix site, please? Is it 120, 119? And I would point out, yes, it is Appendix 119. Column 6 where? Lines 29 to 41. And I would point out that on Appendix 5, where the PTAB identifies MAP-IT as an application, it refers to column 6, lines 33 through 36. And there... The specification says, if MAP-IT is selected, the user is taken to the MAP-IT page shown on Figure 2D. Figure 2D shows the MAP-IT page where the positions of active users within the radius set up in the preferences of the center point XXX within radius YYY is shown. There, the board relied on, and the specification discloses, the selection of MAP-IT. And if MAP-IT is selected, the activities, the operations that are in the claims happen. The receipt of position information, the receipt of and display of position information, and then the updating of position information as there is a movement. I may have lost because I sometimes forget the question I asked by the time we got done. But I thought my question was, where in the specification is there support for the conclusion that the claim construction is occurring during or near the time of the startup of the application? So is that what you were referring to in 6? Because I'm not kind of seeing it. Okay. Well, what the specification discloses there and what the PTAB looked at... And is that what you're showing me to support the board's conclusions that the correct construction is occurring during or near the time of the startup? That's right. And what the specification discloses is that if you select MAP-IT, these things occur. That at least suggests that there's some nearness in time to activities occurring. I thought the claims required use of the method, right? Responsive to launch. Is that what we're talking about here? Well, the claims say is, for example, that... Where are you? I'm at appendix 131, claim 1, lines 9 through 12. The method is invoked responsive to launching an application on the first wireless device. That is, the user uses the method in response to the launch, right? Well, it says... No, no, no, no. Answer my question. Is that what we're talking about? I don't think that's correct, Your Honor. I think it is correct that... What is happening in response to the launch? It says the method is invoked or whatever. What does it mean when it says the method is invoked? Well, the invocation is causing receipt, and I'm referencing now appendix 130, line 57, causing receipt of information on the first wireless device representing the position. Further down, causing display of the map on the first wireless device. And then further down on line 66, causing receipt of information representing a positional update. Isn't that true in the prior art that when the application is used that you get information as a result of that? The prior art, however, is completely silent about the invocation of those steps responsive to launch of an application. I thought the prior art showed that when you launched an application, you got information. That's incorrect, Your Honor. What's incorrect about it? Because the prior art, as Uber recognizes, is silent about an application and any application launch on the user device. It just does not show that. Therefore, and Uber did not show, any connection between launch and any invocation of those steps that are recited in the claim. What does invocation of the steps mean? According to you, it means just receipt of information. Well, it causes those things to occur. The receipt of information, you mean? Well, receipt of information, receipt of map information, receipt and then display of that information on the phone, receipt of updated positional information as well. In your view, that's all that's required is just receipt of information once you launch the application. Well, the two things, the things are connected. But the answer, is that correct? That you launch the application, you get information, the claim is satisfied? I don't believe that's correct, Your Honor. Well then, I thought that's what you were saying. What are you saying? The reason is, is that those things and those steps and the receipt of information, the display of information, the receipt of updated information, those things are responsive to launching the application. There's a connection between the activities and the claims. But doesn't that happen in the prior art that when the application is launched you get the information? No. If that's all that's required, isn't that in the prior art? It is not. It is not in the prior art. Why not? Don't you have to launch the application before you can do anything? Well, but the claim requires... The answer is yes? Well, not in, you don't have to invoke that method responsive to launch. And that's what the claims require. A connection between... But you say all that requires is receiving the information. It does not. It requires a connection between launching the application. And let me explain why that's important. Where in the spec do they talk about that? I mean, maybe there's a connection, but we started this discussion with talking about the claim limitation that the board invoked, which was, is occurring during or near the time of startup of the application. That's a temporal limitation. So, you're talking here about you start the application and then something happens in response to the startup. But where do we get that temporal? During or near the time of the startup? Well, I mentioned that column six, lines 33 to 36, talk about pressing or selecting MAP-IT and then operations occur. So you... And is your interpretation of this that MAP-IT is the application or that BuddyWatch is the application? We have said MAP-IT is an application. The PTAB accepted that and found MAP-IT was an application as well. Well, in this paragraph that you've pointed us out to, it talks about the BuddyWatch application. And it doesn't refer to... It refers to MAP-IT as a selection upon the launching of the BuddyWatch application. Am I reading that paragraph correctly? You are. And I will say... So that doesn't... This paragraph isn't supporting the notion that MAP-IT is an application. And why isn't it, for example, as your opposing counsel said, a routine or a subroutine? Well, I will say the specification does not say specifically that... It does not specifically call MAP-IT an application. But what it does do, it calls MAP-IT a command or a function. And what the specification further says is that commands can be invoked to allow the user to select a map display. That's at column 24, lines 36 to 57. Commands. You can select MAP-IT and that can be invoked to allow the user to select the map display. That directly ties the invocation language of the claims to selecting a software command. Now you're talking about the user activity being invoking the application as opposed to the receipt of the information. I'm not... I really don't understand your claim construction. You launch the application, then what is it that constitutes use of the method? Is it the receipt of the information or some action by the user? What are we talking about? Your Honor, if we look at... Let me try to ask this. Is your position that the application is launched and it's running after it's launched and then at a point in time it's accessed through the MAP-IT routine? No. In order for these claims to be met, there needs to be some connection between the launching of the application and the receipt of that information. The claims specifically tie those things together. Why doesn't that happen in the prior art? Kanishi, you know, you launch the application, you get information about taxi locations. Why isn't that within the claim? Because, Your Honor, there's no specific disclosure in Kanishi of an application to perform these steps. And there's no... So there's no... Your argument really now is that Kanishi doesn't show an application at all? Well, we have made that argument. The PTAB did not agree with that argument. But that is not... That is not the only part of our argument, Your Honor. Well, let's assume that Kanishi does show the launching of an application. And it also shows receipt of information on the launching of the application. And according to what I understand you to be saying, the receipt of the information comes within the claims. That completely eviscerates what responsive to launch means. And that there needs to be... But it's to your own interpretation. You say the receipt of the information is invoking the application. That happens in Kanishi. It happens in the prior art. But it does not happen responsive to launch or in association with launch as the claims require. And what that construction... It happens immediately after launch, doesn't it? No. We don't know that. There's nothing in Kanishi that suggests that. Kanishi describes you launch the application. You get information about taxi location. The only application that Kanishi specifically discloses is an application on a central server. And it talks about a user interacting with an application on a central server. That's not launching an application on a user device. And that's what the claims require. And there's nothing in Kanishi or Mitsuoka that suggests that any activity happens responsive to launch. And by interpreting the claims the way that Uber suggests... What happens responsive to launch prior to the user pressing MAP-IT? Our position is that launch is pressing MAP-IT. That that invocation, as the specification repeatedly discusses, column 15, lines 59 through 65, it is a function that can be invoked to provide a MAP. Column 16, lines 38 through 60, it can be invoked after the instant buddy relationship has been set up and to allow MAP display. The specification is consistent about the invocation of MAP-IT... So all of your entire argument depends on our construing MAP-IT as being the application and not buddy watch for purposes of this claim? Not necessarily, Your Honor. But the specification is crystal clear with respect to MAP-IT being what is disclosed and described as being invoked to cause... Well, what about... We started this with your showing us calling out column 6, right? Lines 29 through 44. And this is a detailed discussion of MAP-IT which you relied on. I mean, this talks about the buddy watch application program. It does. And the claims, I believe, are broad enough to cover if a separate application is already running. But that's irrelevant because what we're talking about to invoke the specifically claimed functionality is MAP-IT. So whether or not there's something else on the phone that's been launched and has been running is irrelevant to invoking the MAP-IT functionality which is specifically claimed and which is specifically near in time to the functions that are recited being performed. So can MAP-IT be alone? Yes. Can there be another application? There could be, but it's irrelevant to what's claimed because the functionality that is being invoked and that is recited is MAP-IT. And the reason, Your Honor, this is important, and the nearness of time, does the Board say any of this? Where is the Board? What are you referring to in the Board's opinion? Your Honor, what the Board said was that adopting Uber's position would make the claim terms meaningless. At the oral argument, Uber- Well, they were referring to the responsive to the application. I mean, it wasn't this differentiation between MAP-IT and buddy watch. That reference was to those words. Well, that's true, but they're all of a piece. What Uber argued was that responsive to launch basically has to mean after launch and can be any time. And what the PTAB said is no. But any time means in the prior art, any time, as soon as you launch you get the information. But that's not what happens, Your Honor, in the prior art. The prior art does not disclose that. The prior art discloses, both Konishi and Mitsuoka disclose, an application on the central server to perform operations. That's completely separate and apart. What constitutes the invocation, then, in the prior art? That's not disclosed in the prior art. That's not disclosed at all, and that's recognized by both Uber and the Board. You get the information in the prior art after the application is launched. You get it sometime, and you get it sometime after launch. Two days later? It's immediate, isn't it? We don't know because there's no disclosure in the prior art of anything that's happening on the user side. You're hailing a taxi. You don't get the information two days later, right? But we don't know what's actually on the user device. There's no disclosure of that, and Uber concedes that. Uber says neither Konishi nor Mitsuoka state that an application is launched. They say both of that, Appendix 167. But the Board disagreed with you on that. No, the Board agreed with Uber on that. Konishi does not. They disagreed with you. They said that Konishi shows the launch of an application, right? What the Board said. Yes or no? No. No. What the Board said was that Konishi has an application. We disagreed with that because the disclosure, we agreed that there must be software. But neither Konishi nor Mitsuoka show that there is an application that's dedicated to performing this functionality. You might receive an email. You might receive a text. What does it mean to have the application running? Doesn't that mean disclosure of information? I'm sorry, I missed that. What does it mean if the application is running? Doesn't that mean it provides information? If the application is running, it could. But that's not what's claimed. What's claimed is responsive to launch. And both the District Court and the Board correctly said those words have to have meaning. There has to be some connection between the recited activities and the launch of the application. And that just wasn't shown in the primary. Wait a minute. Wait a minute. Okay. So there's a running application. How do you launch? In that there could be yes. Well, we find this testimony to be persuasive evidence of a relationship between the running application and the invocation of the method. And I'm sorry, I'm not sure where you're... Page 31. They're talking about Mitsuoka. Yes. So you have a running application and an effect, an invocation. And what the PTAB said was the application was launched at some point prior to invocation. Right. The claims instead require a relationship between the starting of the application. And the starting of the application, that's the launch. And then after it's started, it runs. And while it's running, as you admitted a moment ago, it provides information. Right. And what the claims require is responsive to launch. The parties agreed and substantial evidence supports that launch is the startup. Okay. We're out of time. Okay. Thank you. Thank you. Okay. Your Honors, I guess I'll just highlight two points and sit down and list your questions. Starting where we ended, the board did find that there was an application in Kunichi on the mobile side, and it was launched. That was a finding. It's supported by substantial evidence. And I don't think X1 has challenged that finding on appeal. Secondly, I would say with respect to Buddy Watch and the selection of the MAP-IT function, we did not see any evidence in the record. We did not hear counsel point out any support for the idea that one cannot wait indefinitely before one selected that function. So there is no record support for the during or at the near of a time of. And I think Your Honors have spoken, highlighted the parts of Kunichi that I would highlight for you, in that Kunichi launches in steps 30 through 33. There's some user input, and then the recited activities happen. And for those reasons, we'd ask you to reverse the construction, reverse the claims if you can, but remand back for the ones that need to be considered again. Thank you. We thank both sides, and the case is submitted.